## Boreing v. Commonwealth.

(Decided November 27, 1925.)

Appeal from Letcher Circuit Court.

1. Criminal Law—Refusal of Continuance for Witness, whose Evidence had Been Taken Down on Examining Trial and could have Been Read, Held Not Abuse of Discretion.—In murder prosecution, refusal to sustain motion for continuance on ground of absense of witness, who would testify as at examining trial, held not abuse of discretion, where evidence of witness was taken by stenographer on examining trial and was on file and defendant had been offered permission to read it.

2. Criminal Law—Refusal of Motion for Continuance on Ground of Absence of Witness Not Reviewed, in Absence of Testimony of Witness.—In murder prosecution, refusal of motion for continuance on ground of absence of witness cannot be reviewed, in absence of testimony of witness, so that court may determine whether or not testimony was competent and extent of its materiality.

3. Criminal Law—Motion for Continuance on Ground that Accused had Not Sufficient Time to Prepare Defense Held Properly Refused.

—In murder prosecution, motion for continuance on ground that accused had not sufficient time to prepare defense held properly overruled, where he had competent attorney and witnesses were known and comparatively few and all local to place.

4. Homicide—Evidence Held Sufficient to Sustain Verdict of Voluntary Manslaughter.—In murder prosecution, evidence held sufficient to sustain verdict of voluntary manslaughter.

5. Criminal Law—Statement of Accused Held Not Prejudicial.—In murder prosecution, statement of accused after killing, testified to by witness, that gun was bad luck to him when he had killed a man with it, and that he had two home in his trunk, held not prejudicial even if incompetent.

6. Criminal Law—Statements by Companion of Accused, After Homicide, that Accused should Not have Done it, Held Competent and Not Sufficiently Prejudicial to Authorize Reversal.—In murder prosecution, testimony of witness as to statement made by companion of accused, after homicide, that accused should not have done it, that he did not have to, held competent as calling for reply by accused and, in view of overwhelming testimony, not sufficiently prejudicial to authorize reversal.

7. Homicide—Instruction on Theory of Self-Defense Not Warranted by Evidence Held to have Been in Favor of Accused.—Instruction, which authorized accused to shoot deceased in necessary self-defense, if at time he was, or in good faith believed he was, in danger of death of great bodily harm at the hands of deceased or either of his companions, held not error, though there was no evidence of danger at hands of companions, being in accused's favor.

8. Criminal Law—Argument of State's Attorney Concerning Untruthfulness of Companion of Accused, who was Not a Witness, Held Immaterial.—In murder prosecution, argument by Commonwealth's attorney commenting on failure of accused to introduce companion at time of homicide, and stating that such companion had not sworn to the truth in fifteen years, held not to have any material effect on merits of case.

9. Criminal Law—Remarks of State's Attorney Concerning Certain Feud Held Not to Authorize Reversal.—Remark of Commonwealth's attorney as to certain feud, and reference to one of leaders in faction as notching his gun when he killed member of other faction, held, while not altogether proper, not to authorize reversal.

R. MONROE FIELDS for appellant.

FRANK E. DAUGHERTY, Attorney General, and CHAS. F. CREAL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellant, John Boreing, on December 25, 1924, at about 2:20 o'clock p. m., shot and killed Arthur Barnett on the railroad track between the village of Seco and

Kona in Letcher county. He was indicted and charged with murder, and upon his trial was convicted of voluntary manslaughter and punished by confinement in the penitentiary for 15 years. On this appeal from the judgment pronounced on the verdict after his motion for a new trial was overruled he urges by his counsel, as errors authorizing a reversal; (1) the refusal of the court to sustain his motion for a continuance; (2) the verdict is flagrantly against the evidence; (3) the admission of incompetent evidence; (4) error in the instructions, and, (5) prejudicial remarks of counsel for the Commonwealth in his closing argument to the jury.

1. The only absent witness for whom the motion for continuance was made was Dolly Pease, and defendant's affidavit stated that she would testify as she had done on the examining trial, at which her evidence was taken by a stenographer and transcribed and was on file as a part of the record of the prosecution. That testimony is not in the record in this court, and we have no means of determining whether it was relevant or not; but the court in overruling the motion stated that defendant might read it on his trial as copied by the stenographer. However, he did not avail himself of that opportunity by either reading or offering to introduce her testimony. It is apparent that even if the testimony of the absent witness was in the record and we should hold that it was relevant, the court did not abuse a sound discretion in overruling the motion for continuance, when at the same time defendant was offered the benefit of it if he saw proper to introduce it. Independently of that fact, we are without authority to sustain this ground in the absence of the testimony of the witness so that we might determine whether or not it was competent, and if so the extent of its materiality. Furthermore, defendant's contention here comes with poor grace after declining to introduce the witness's testimony given at the examining trial under the privilege given him by the court to do so. The other suggested ground for continuance contained in the affidavit, that defendant had not sufficient time to prepare his defense since his arrest and up to the time of his trial, is equally without merit, since he had a most competent attorney to represent him from the beginning and no fact or circumstance is pointed out or even suggested that he could have more fully developed or produced on his trial. The witnesses were comparatively few and were all local to the place, they

having been concentrated on the day of the homicide, and he knew all of them as well as the location of their residence in the immediate vicinity, and the general statement in the affidavit that he had not sufficient time to prepare his defense is unsupported by the record.

2. In disposing of ground (2) it will be necessary to make a brief statement of the substance of the evidence. Defendant was 38 years of age and a mine foreman of some coal operating company at Kona. About 500 or 600 yards from that place is another mining village called Seco and between the two runs the railroad track. The deceased had worked under the defendant at the operations of which he was mine foreman in the capacity of blacksmith and had been discharged, but he had been given other work which he thereafter performed. Just how long that occurred before the homicide is not developed in the evidence. There lived in Kona a man by the name of Nell Kincer and his wife ran a boarding house. On Christmas Eve night the deceased, although he lived in that village, stayed at the Kincer home, having gone there with some of the grown up Kincer boys. On the next day Mr. and Mrs. Barnett with a number of others, gathered at the Kincer home to partake of a Christmas dinner. Just before the time for the meal defendant appeared at that house and he and deceased had some words, in which the latter called him "A damn bald-headed son-of-a-bitch" or a "Damn bald-headed rascal." He was persuaded by some of those present to desist from the quarrel and he went out in front of the house and sat upon the railroad track or the ends of the ties. A witness went to see him and he made some remark to the effect that if defendant would come out there he would give him a good whipping, or that they would fight it out with their fists. Defendant, however, did not accept the challenge, and directly after dinner the deceased, Joda Kincer, Ken Cook and L. C. Campbell started up the railroad to Seco for the purpose of getting some cigarettes. A short while after they had left, the defendant, who had also left about the same time, returned to the Kincer boarding house and inquired of Mrs. Barnett and Mrs. Kincer of the whereabouts of defendant and was informed that he had gone to Seca with his companions. Mrs. Barnett at the time requested deceased to not hurt her husband, and defendant answered by saying that he would not touch a hair on his head and would not speak to him if he (deceased) didn't speak to

him first.   He then left and went in the direction of Seco,. but stopped at his house, which was near the railroad and in that direction, and remained there for some time and then started up the railroad towards Seco in company with Ted Cook and John Harlan Combs.  As they approached near to Seco they saw deceased and his companions walking down the railroad track meeting them, and when within about 50 or 60 yards of them defendant requested Ted Cook, who was a boy 17 years of age, to go back and he did, turn back, and when he started in the opposite direction he immediately heard the shots that killed deceased.   John Harlan Combs, who was with defendant, was not introduced by him.  All of the companions of deceased stated that when defendant came within 15 or 20 feet of their crowd he drew his pistol and without saying a word commenced to fire at deceased, the first shot striking him in the body and passed near to or through his heart, when he careened and started to fall, and defendant then shot him through the head and fired two other shots in his body and two others were fired after deceased fell, but they missed him, there being six shots in all.   They stated that neither deceased nor any of the crowd said or did anything at the time to provoke the shooting.

Defendant testified that just before he commenced to shoot, deceased made a remark, in substance, that "Now is a good time to shoot it out," and made some sort of demonstration to obtain a weapon, and that he did the shooting in what he believed was his right of self-defense.  He proved that one of the witnesses for the prosecution, who was a companion of deceased, made a statement shortly after the homicide corroborating his version of what transpired, but that testimony, if true, only served to contradict that witness.  The others who testified the same as that one were uncontradicted.  Defendant turned over his pistol to some of those present and went to Seco and surrendered himself to a deputy sheriff who resided there, and he told that officer in the presence of others that deceased drew a pistol on him, and that when he fired he took true aim at his heart.  Immediately after the shooting defendant stated that he felt sure deceased was dead, which proved to be true, and his body was lifted from between the rails to the side of the track in order to enable a passenger train to pass.  Defendant also stated that he saw Joda Kincer, a witness for the Commonwealth, and who was one of the compan-

ions of the deceased, take something from the clothing of deceased which he thought was a pistol, but that witness denied having done any such thing. It was also proven that practically all of the parties concerned, including the principals in the tragedy, were drinking and were more or less intoxicated, or at least had been up to the time of the dinner, and there was testimony that defendant drank some after dinner at his house and before he started to Seco. From the evidence as above outlined it will at once appear that there is no room for the contention that the verdict is not sustained by the evidence.

3. One item of the alleged incompetent evidence was a statement testified to by the witness, Bob Hart, who accompanied the deputy sheriff from the latter's home to the scene of the homicide after the defendant had surrendered, and which was, "I (defendant) want you (deputy sheriff) to take special good care of this gun, because it is a good one, but I never expect to use it any more. I claim a gun is bad luck to me when I have to kill a man with it. I have two at home in my trunk." It is claimed that the statement was tantamount to an admission on the part of defendant that he had killed two other men in the past with the pistols that he said he had at home in his trunk, but it will at once be seen that it requires a somewhat distorted construction of the language to give it that interpretation. However, if true, it was a statement of defendant himself and was a part of his conversation at the time of his surrender, and we fail to see wherein it could be or was prejudicial, even if technically incompetent. The same witness also testified that immediately upon his arrival at the scene of the homicide after the surrender, Ted Cook, the 17-year-old boy who accompanied defendant up the railroad track and who he directed to go back, had arrived on the scene and was crying and that he said to defendant, "You ought not to have done that. You didn't have to." And defendant answered, "Ted, what in this world is the matter with you, you ought not to talk that way." That testimony, at most, was only a suggestion from the speaker to defendant that he ought not to have committed the homicide; and the intimation that it embodied, to the effect that it was not justifiable, was spoken in defendant's presence and he had an opportunity to correct it which he did not do, and we think it was such an occasion as that he was called on to speak the truth and to correct whatever error that was contained in the statement of

the spokesman made in his presence. At any rate, in view of the overwhelming testimony of the Commonwealth we are unable to say wherein it was sufficiently prejudicial to authorize a reversal therefor. The few other objections to the testimony are far less meritorious than those we have discussed and we, therefore, find no merit in this ground.

4. The only complaint of the instructions under this ground is directed to the self-defense one, it being expressly conceded that the others are without fault. The criticism of the self-defense instruction is that it authorized defendant to shoot the deceased in his necessary self-defense if at the time he was, or in good faith believed, he was in danger of death or great bodily harm "at the hands of said Arthur Barnett, or L. C. Campbell, or Joda Kincer, or Ken Cook," &c. It is strongly urged that (and it is true) there was no evidence of any pending danger from L. C. Campbell, Joda Kincer or Ken Cook, who were with deceased at that time, and that the instruction erroneously justified the shooting of deceased by defendant upon the ground of any supposed danger to his life or limb at the hands of either of those three persons; but the logic of this contention is not comprehended by us, since the error complained of was clearly in defendant's favor and against the Commonwealth. It gave the jury an opportunity to acquit him upon grounds for which there was no testimony to support, and he can not complain because the court did a better part by him in its instructions than he was entitled to.

5. Lastly, it is insisted under ground (5) that the Commonwealth's attorney departed from his proper latitude in his closing argument to the jury. One of the complained of statements related to comments by the attorney upon the failure of defendant to introduce his companion on the walk up the railroad, John Harlan Combs, and in which he said that if Combs had been introduced he, the attorney, "Would have pleaded limitations as to him, for he hasn't sworn the truth in 15 years." If the witness had testified the remark would have been within the limits of the privilege of counsel, but not having testified it is difficult to see any other effect the remark could have on the merits of the case more than to reflect on the character of the person who accompanied defendant up the railroad on the fatal occasion, and to so construe the remark it could not possibly have any material effect upon the merits of the case. The prose-

cutor furthermore made some remark about the Hatfield-McCoy feud and referred to how old man Hatfield, the leader of one of those factions, would notch his gun when he killed a member of the other faction; but none of that could in any manner be said to prejudice the rights of defendant in this case. At most, it was but a reminder to the jury of the tragic scenes that had been perpetrated in that community and he thereby appealed to it to be vigilant in the performance of its duty in ridding the community of such repeated occurrences. It might not have been altogether proper but, we repeat, it can not be given the effect of authorizing a reversal of the judgment as contended for by learned counsel for defendant.

If the witnesses for the Commonwealth are to be believed the life of a young man only 22 years of age was destroyed on that fatal Christmas day without any pretense of justification or excuse. Some of them are wholly uncontradicted and a number of circumstances appear in the record, some of which we have stated and some of which we have not, tending strongly to corroborate the testimony of those witnesses. As much as two hours had elapsed since the little quarrel at the Kincer home, and defendant if he had desired to make the day what it ought to have been could have easily deferred his visit to Seco, which was not undertaken until after he had learned that deceased had gone to that place. He took deadly aim at the heart of deceased, as the witnesses testified, and which was not denied, and continued firing while deceased was falling, and even after his dead body laid prostrate upon the ground he fired two other shots. The jury appears to have dealt leniently with him and he presents no legal ground sufficient to convince us that he has not had a fair and impartial trial.

Wherefore, the judgment is affirmed.